IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

PHOENIX LIFE INSURANCE COMPANY,

Plaintiff,

v.

HINSDALE BANK AND TRUST COMPANY,

Defendant.

Index No.: ____________________

Jury Demanded

## COMPLAINT

Plaintiff Phoenix Life Insurance Company ("Phoenix"), by and through its counsel, Kelley Drye & Warren LLP, hereby brings this complaint for negligent misrepresentation, declaratory relief, and unjust enrichment ("Complaint") against Hinsdale Bank & Trust Company ("Hinsdale Bank") and, in support thereof, states as follows:

## THE PARTIES

1. Phoenix is a life insurance company created under the laws of the State of New York.

2. Hinsdale Bank is an organization chartered in the State of Illinois with its principal place of business in Illinois.

## JURISDICTION AND VENUE

3. Jurisdiction is based upon diversity of citizenship, as Hinsdale Bank is an Illinois company, Phoenix is a life insurance company created under the laws of the State of New York,

and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs pursuant to 28 U.S.C. §1332(a)(1).

4. Venue is proper in the United States District Court for the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §1391(a)(2), in that a substantial part of the events giving rise to the claims occurred in this judicial district.

## FACTUAL BACKGROUND

5. Wendy and Kelly Nastav filed an Amended Complaint (the "Natav Complaint") against Phoenix on October 4, 2007, a copy of which is attached to this Complaint as Exhibit A.

6. The Nastav Complaint alleges that in 1993, Wendy and Kelly Nastav's parents, John and Patricia Nastav, created the John and Patricia Nastav Irrevocable Life Insurance Trust, Trust No. N-793, dated 3-29-93 (the "Trust"), and designated Wendy and Kelly Nastav as Trustees of the Trust. *See* Nastav Complaint, ¶¶ 1, 5.

7. Thereafter, as alleged in the Nastav Complaint, the Trust purchased a life insurance policy from Phoenix in the face amount of $2,482,280.00 and with a death benefit in the amount of $4,500,000.00 ("the Policy"). *See* Natav Complaint, ¶ 7. A true and correct copy of the Policy is attached hereto as Exhibit B.

8. On or about February 1, 2005, Hinsdale Bank loaned $2,500,000.00 (the "Loan") to Intrastate Piping and Controls, Inc., Intrastate Millwright Service, Inc., and Intrastate Electrical Services, Inc. (the "Intrastate Entities"). The Intrastate Entities are listed as the Loan Borrowers, and John and Patricia Nastav are listed as the Loan Grantors. John and Patricia Nastav, in their capacities as Officers and part-owners of the Intrastate Entities, authorized the Loan on behalf of the Intrastate Entities.

9. Due to non-payment on the Loan, Hinsdale Bank began obtaining collateral to secure the Loan and other loans to the Intrastate Entities beginning in January 2005.

10. Specifically, on February 1, 2005, as alleged in the Nastav Complaint, in order to avoid default on the Loan from Hinsdale Bank and provide Hinsdale Bank with some of the required collateral, John and Patricia Nastav signed and executed an Assignment of Life Insurance Policy as Collateral ("Collateral Assignment") regarding the Policy. *See* Nastav Complaint, ¶ 10. The Nastav Complaint alleges that John and Patricia Nastav's execution of the Collateral Assignment was improper because John and Patricia Nastav were not authorized to take such action because they are neither Trustees and/or Beneficiaries of the Trust. *See* Nastav Complaint, ¶ 10.

11. Following the execution of the Collateral Assignment, Hinsdale Bank authorized the assignment of the Policy as collateral for the Loan. *See* Nastav Complaint, ¶ 10. A copy of the Collateral Assignment is attached hereto as Exhibit C.

12. Hinsdale Bank did not take any steps to determine whether John and Patricia Nastav were authorized to assign the Policy as collateral for the Loan or to determine if the information reflected on the Collateral Assignment was correct prior to submitting the Collateral Assignment to Phoenix.

13. Without conducting any investigation into the truth of the representations made on the Collateral Assignment, Hinsdale Bank sent the Collateral Assignment to Phoenix for acknowledgement.

14. In response, Phoenix instructed Hinsdale Bank that John and Patricia Nastav were required to sign the Collateral Assignment as "Trustees" of the Trust, which placed Hinsdale Bank on notice that the Collateral Assignment would only be valid if John and Patricia Nastav were in fact Trustees of the Trust.

15. Following receipt of Phoenix's response, Hinsdale Bank took no steps to determine whether John and Patricia Nastav were the Trustees of the Trust or were otherwise authorized to assign the Policy as collateral.

16. Instead, upon information and belief, Hinsdale Bank typed the word "Trustee" under John and Patricia Nastav's names on the Collateral Assignment, and then sent the Collateral Assignment to Phoenix.

17. The Intrastate Entities subsequently defaulted on their payments to Hinsdale Bank, and Hinsdale Bank made a demand upon Phoenix of the amount due and owing on the Loan in the total amount of $464,000.

18. Prior to making this demand on Phoenix, Hinsdale Bank reviewed the documents creating the Trust. Those documents identify John and Patricia Nastav as the grantors of the Trust, and Wendy and Kelly Nastav as the Trustees. Accordingly, upon review of the Trust documents, Hinsdale Bank knew or should have known that John and Patricia Nastav were not the Trustees of the Trust and were not authorized to execute the Collateral Assignment, and that Hinsdale Bank did not have authority to demand any payment from Phoenix based on the Collateral Assignment.

19. After reviewing the Trust documents, although Hinsdale Bank knew or should have known that it did not have authority to demand payment from Phoenix based on the Collateral Assignment, Hinsdale Bank nonetheless made a demand on Phoenix in the amount of $464,000.

20. Thereafter, on or about June 11, 2005, Phoenix acknowledged the Collateral Assignment to Hinsdale Bank made by John and Patricia Nastav. On or about March 8 ,2007,

Phoenix provided payment in the amount of $464,000 to Hinsdale Bank and recorded it as a loan against the Policy.

21. The Nastav Complaint alleges that Phoenix improperly recorded a loan against the Policy in the amount of $464,000, and makes a demand upon Phoenix to remove the recorded loan from the Policy and to restore the $464,000 face value of the Policy and corpus of the Trust. *See* Nastav Complaint, ¶ 14.

22. Phoenix acknowledged the Collateral Assignment to Hinsdale Bank made by John and Patricia Nastav and provided payment in the amount of $464,000 to Hinsdale Bank based on the representations made in the Collateral Assignment that was negligently provided to Phoenix by Hinsdale Bank.

**COUNT I**
**(Negligent Misrepresentation)**

23. Phoenix incorporates paragraphs 1 through 22 as paragraph 23 of Count I.

24. Hinsdale Bank submitted the Collateral Assignment to Phoenix containing false statements and representations that John and Patricia Nastav were Trustees of the Trust and had authority to assign the Policy as collateral to Hinsdale Bank after carelessly and negligently failing to ascertain the truth or veracity of the statements and representations.

25. Phoenix relied upon these statements and misrepresentations to its detriment as it provided payment in the amount of $464,000 to Hinsdale Bank and recorded it as a loan against the Policy.

26. Hinsdale Bank is liable for the damages suffered by Phoenix in an amount to be proven at trial.

**COUNT II**
**(Declaratory Judgment)**

27. Phoenix incorporates paragraphs 1 through 26 as paragraph 27 of Count II.

28. The Nastav Complaint alleges that Phoenix improperly recorded a loan on the Policy in the amount of $464,000.

29. Phoenix provided the payment in the amount of $464,000 to Hinsdale Bank that was recorded as a loan on the Policy based on the statements and representations made in the Collateral Assignment.

30. Hinsdale Bank submitted the Collateral Assignment to Phoenix containing false statements and representations that John and Patricia Nastav were Trustees of the Trust and had authority to assign the Policy as collateral to Hinsdale Bank after carelessly and negligently failing to ascertain the truth or veracity of the statements and representations that was negligently provided to Phoenix by Hinsdale Bank

31. The Nastav Complaint makes a demand upon Phoenix to remove the recorded loan from the Policy and to restore the $464,000 face value of the Policy and corpus of the Trust.

32. Phoenix seeks a declaration that, in the event that Phoenix is found liable to Wendy and Kelly Nastav and is required to restore the $464,000 value to the Policy, Hinsdale Bank is liable for damages to Phoenix in the amount of $464,000.

**COUNT III**
**(Unjust Enrichment)**

33. Phoenix incorporates paragraphs 1 through 32 as paragraph 33 of Count III.

34. Hinsdale Bank has been unjustly enriched by the receipt of the $464,000 payment provided by Phoenix.

35. Retention of the payment provided by Phoenix violates fundamental principles of justice, equity, and good conscience.

36. In the event that Phoenix is found liable to Plaintiffs and is required to restore the $464,000 value to the Policy, it would be unjust to allow Hinsdale Bank to retain the $464,000 payment provided by Phoenix.

**PRAYER**

WHEREFORE, Plaintiff Phoenix Life Insurance Company respectfully requests that this Court enter judgment against Defendant Hinsdale Bank and Trust Company as follows:

A. Awarding damages to Phoenix;

B. Declaring that, in the event that Phoenix is required to restore the $464,000 value to the Policy, Hinsdale Bank is liable for damages to Phoenix in the amount of $464,000;

C. Ordering that, in the event that Phoenix is required to restore the $464,000 value to the Policy, Hinsdale Bank must disgorge the $464,000 paid to Hinsdale Bank by Phoenix; and

D. Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial on all claims and on all issues triable by a jury.

Dated: April 5, 2010

Respectfully submitted,

PHOENIX LIFE INSURANCE COMPANY

By: /s/ Marla H. Kanemitsu

Julian Solotorovsky
Marla H. Kanemitsu
Catherine James
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606
(312) 857-7070 (telephone)
(312) 857-7095 (facsimile)